ATTORNEYS FOR PETITIONER:
**MARK J. RICHARDS**
**MATTHEW J. EHINGER**
**JAMES R. BETLEY**
ICE MILLER LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JOHN P. LOWREY**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**

Dec 24 2014, 3:52 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

SAC FINANCE, INC.,                        )
                                          )
        Petitioner,                       )
                                          )
            v.                            )   Cause Nos. 49T10-1007-TA-34
                                          )              49T10-1102-TA-11
INDIANA DEPARTMENT OF STATE               )
REVENUE,                                  )
                                          )
        Respondent.                       )

ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**December 24, 2014**

WENTWORTH, J.

This matter is before the Court on the parties' cross-motions for summary judgment regarding whether the calculation of Indiana's bad debt deduction excludes market discount income.[1] The Court finds that it does not.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. During the 2007, 2008, and 2009 tax

---

[1] Portions of the designated evidence are confidential. This order will provide, therefore, only the information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

years, Superior Auto, Inc., an automobile dealership with locations in Indiana, Ohio, and Michigan, sold cars to customers with poor or limited credit on a "buy here pay here" basis. (See Pet'r Des'g Evid., Aff. Walter W. Nims ("Nims Aff.") ¶¶ 5-6; Resp't Des'g Evid., Confd'l Ex. 2 ("Resp't Confd'l Ex. 2") at 3.) Superior Auto financed its customers' purchase prices of the cars as well as the applicable sales tax due pursuant to installment sale contracts. (See Nims Aff. ¶ 6; Pet'r Des'g Evid., Confd'l Aff. Steven L. Goldberg ("Goldberg Aff.") at Ex. C.) Superior Auto then remitted sales tax on the full price of the car to the Department. (See Nims Aff. ¶ 6; Resp't Confd'l Ex. 2 at 4.)

Shortly after these sales, Superior Auto sold its installment sale contracts and assigned all its rights and obligations thereunder to SAC Finance, Inc., a related entity[2] with its principal place of business in Fort Wayne, Indiana. (See, e.g., Nims Aff. ¶ 6; Pet'r Confd'l Ex. 1, Ex. C at 3; Reply Supp. Resp't Cross-Mot. Summ. J. ("Resp't Reply Br.") at 1-2; Resp't Confd'l Ex. 2 at 3.) SAC purchased the installment sale contracts without recourse for 70% of the amount originally financed. (See Nims Aff. ¶ 6; Resp't Confd'l Ex. 2 at 3.) In other words, SAC purchased the installment sale contracts at a 30% market discount from their face value. (See Nims Aff. ¶ 7; Resp't Confd'l Ex. 2 at 3.) Some of the installment sale customers subsequently defaulted on their contracts. (See Nims Aff. ¶ 12; Goldberg Aff. ¶ 7.)

SAC filed three claims with the Department seeking a refund of the Indiana sales tax that Superior Auto paid, but that upon default became an uncollectible receivable to SAC. (See Nims Aff. ¶¶ 13, 18.) After holding an administrative hearing, the Department issued a Letter of Findings that denied SAC 30% of each refund claim.

---

[2] SAC Finance, Inc. and Superior Auto are S-corporations that are owned by the same shareholders in the same percentages. (See Pet'r Des'g Evid., Aff. Walter W. Nims ("Nims Aff.") ¶ 3; Resp't Des'g Evid., Confd'l Ex. 2 ("Resp't Confd'l Ex. 2") at 3.)

(See Resp't Confd'l Ex. 2 at 4; Pet'r Am. Supp'l Pet. Original Tax Appeal, Exs. A-C.)

On July 16, 2010, SAC initiated an original tax appeal challenging the Department's partial denial of its 2007 and 2008 refund claims. On February 11, 2011, SAC initiated another appeal challenging the Department's partial denial of its 2009 refund claim. The Court subsequently consolidated the two appeals. On June 15, 2011, SAC filed a motion for summary judgment. The Department filed a cross-motion for summary judgment on November 3, 2011.[3] The Court conducted a hearing on the parties' motions on January 13, 2012. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "Cross-motions for summary judgment do not alter this standard." SAC Fin., Inc. v. Indiana Dep't of State Revenue (SAC I), 894 N.E.2d 1116, 1118 (Ind. Tax Ct. 2008) (citation omitted), review denied. The resolution of a case by summary judgment is particularly appropriate when, as here, the relevant facts are undisputed and only questions of statutory interpretation are at issue. See Whetzel v. Dep't of Local Gov't Fin., 761 N.E.2d 904, 908 (Ind. Tax Ct. 2002).

---

[3] The Department also moved to strike several purported nonmaterial facts in SAC's summary judgment materials on the basis that SAC improperly claimed that they were not in dispute. (See Resp't Resp. Opp'n Pet'r Mot. Summ. J. ("Resp't Resp. Br.") at 2-6.) The Court denies the Department's motion because nonmaterial facts are not dispositive and the resolution of this matter depends primarily on pure questions of law. See, e.g., Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1129 (Ind. Tax Ct. 1992) (defining a material fact as "one which may be dispositive of the case") (citation omitted); Crowe, Chizek, & Co. v. Oil Tech., Inc., 771 N.E.2d 1203, 1205 n.3 (Ind. Ct. App. 2002) (treating a disputed, nonmaterial fact as true), trans. denied; Gorka v. Sullivan, 671 N.E.2d 122, 133 n.15 (Ind. Ct. App. 1996) (declining to address contentions regarding nonmaterial facts), trans. denied.

## LAW & ANALYSIS

Indiana allows a retail merchant to adjust the amount of sales tax it must remit to the Department on receivables that have been written off as uncollectible debt for federal income tax purposes under IRC § 166. See IND. CODE § 6-2.5-6-9 (2007). See also IND. CODE § 6-2.5-2-1 (2007). The issue before the Court is whether the calculation of a bad debt deduction under Indiana Code § 6-2.5-6-9 (the Indiana Bad Debt Statute) excludes market discount income, i.e., income accounted for under IRC §§ 1276 and 1278 (the Market Discount Rules).[4] The resolution of this issue depends on: (1) whether SAC's use of the Market Discount Rules to calculate its adjusted basis in its uncollectible installment sale contracts under IRC § 166 was proper; and if so, (2) whether SAC's market discount income must be excluded under Indiana Code § 6-2.5-6-9.

### (1)

SAC claims it is entitled to judgment as a matter of law because its use of the Market Discount Rules was proper. (See Pet'r Br. Supp. Pet'r Mot. Summ. J. ("Pet'r Br.") at 9-18.) The Department contends, however, that SAC incorrectly used the Market Discount Rules because those Rules bypassed the mathematics of IRC § 166, were inapplicable according to IRC § 453B, and were unavailable because SAC failed to designate evidence to show that it complied with certain procedural prerequisites. (See Resp't Resp. Opp'n Pet'r Mot. Summ. J. ("Resp't Resp. Br.") at 9-18; Resp't Reply Br. at 2-3.)

---

[4] The Market Discount Rules embody a federal income tax accounting convention that allows for earlier recognition of gain than otherwise would be recognized nearer to the end of an installment sale contracts' term, or in the case of default, might never be recognized. See generally I.R.S. Publication 550 at 15 (2007).

# IRC § 166

The Department first claims that SAC improperly calculated its Indiana bad debt deduction by using the Market Discount Rules instead of using the mathematics of IRC § 166. (See Resp't Reply Br. at 2-3.) As explained below, however, the Market Discount Rules are part of the mathematics of IRC § 166.

The Indiana Supreme Court has stated that the mathematics of IRC § 166 must be used when calculating an Indiana bad debt deduction under the Indiana Bad Debt Statute. Indiana Dep't of State Revenue v. 1 Stop Auto Sales, Inc., 810 N.E.2d 686, 689 (Ind. 2004). IRC § 166 provides that "the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in [IRC] section 1011 for determining the loss from the sale or other disposition of property." I.R.C. § 166(b) (2007). Thus, the mathematics of IRC § 166 depend on the content of other sections of the Internal Revenue Code.

IRC § 1011, in turn, refers to other sections of the Internal Revenue Code:

> The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter [O] and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016.

I.R.C. § 1011(a) (2007); see also, e.g., Federal Home Loan Mortg. Corp. v. C.I.R., 121 T.C. 129, 135-36 (2003) (explaining that IRC § 1011 generally requires the use of cost as the basis under IRC § 1012 unless an alternative basis rule under subchapter O, C, K, or P applies). The Market Discount Rules are contained in Subchapter P. See I.R.C. §§ 1276, 1278 (2007). Accordingly, SAC's use of the Market Discount Rules did not

bypass the mathematics of IRC § 166, but was part of it.

## The Department's Remaining Claims

The Department also claims that even if the mathematics of IRC § 166 includes the Market Discount Rules, SAC cannot properly use them to calculate its federal bad debt deduction for three alternative reasons. First, the Department claims that SAC may not use the Market Discount Rules because they apply only to "market discount bonds," not installment sale contracts.[5] (See Resp't Resp. Br. at 9-11.) Next, the Department claims that SAC cannot use the Market Discount Rules because IRC § 1278 excludes from the term "market discount bond" "[a]ny installment obligation[6] to

---

[5] "[T]he term 'market discount bond' means any bond having market discount." I.R.C. § 1278(a)(1)(A) (2007) (emphases added). See also I.R.C. § 1278(a)(3) (providing "[t]he term 'bond' means any bond, debenture, note, certificate, or other evidence of indebtedness" (emphasis added)); I.R.C. § 1278(a)(2)(A) (providing "[t]he term 'market discount' means the excess (if any) of . . . the stated redemption price of [a] bond at maturity, over [] the basis of such bond immediately after its acquisition by the taxpayer"). SAC's installment sale contracts constitute evidence of customer indebtedness for the purchase of a car and are therefore "bonds" for purposes of the Market Discount Rules. See State ex rel. Cohen v. Hawes, 14 N.E. 87, 88 (Ind. 1887) (referring to a debt as a specified sum of money arising out of a contract that is due or owing from one person to another). Consequently, the Department's claim that SAC improperly elevates form over substance by contending that its installment sale contracts are market discount bonds is unavailing just like SAC's prior form over substance argument in SAC Finance, Inc. v. Indiana Department of State Revenue (SAC I), 894 N.E.2d 1116, 1121 (Ind. Tax Ct. 2008), review denied. (See Resp't Resp. Br. at 9-11)

[6] An "installment obligation" is not defined in IRC § 453B. See I.R.C. § 453B (2007). Contrary to the Department's argument, however, a contract arising from an "installment sale" that is subject to IRC § 453 is necessarily an installment obligation. (See Resp't Resp. Br. at 13.) To find otherwise would be an absurdity. See also Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) (stating that courts should avoid interpretations of federal statutes that produce absurd results if alternative interpretations consistent with the legislative purpose are available).

which [IRC] section 453B applies."[7]  (See Resp't Resp. Br. at 12-13); I.R.C. § 1278(a)(1)(B)(iii) (footnotes added).  Finally, the Department claims that SAC cannot use the Market Discount Rules because it failed to designate evidence showing that it made the required election on its federal tax returns to enable it to use them in calculating its adjusted basis for federal income tax purposes.  (See Resp't Resp. Br. at 13-15.)

These arguments all require a determination of the validity of the federal bad debt calculation under IRC § 166.  Nonetheless, the Court has previously stated that "[w]ith regard to federal income taxes, [the Indiana Bad Debt Statute] only requires that the bad debt be deducted for federal income tax purposes, not that the taxpayer demonstrate the validity of the deduction."  Chrysler Fin. Co. v. Indiana Dep't of State Revenue, 761 N.E.2d 909, 916 n.17 (Ind. Tax Ct. 2002) (emphasis and citation omitted), review denied.  Therefore, the Court will not determine whether the federal bad debt calculation is correct.

(2)

Having decided that SAC's use of the Market Discount Rules to calculate its federal bad debt deduction under IRC § 166 was proper, the Court turns to whether the

---

[7]  IRC § 453B applies to the party that disposes of the installment obligation and the Department has provided no authority that IRC § 453B must apply to a buyer that is an assignee in an installment obligation disposal transaction.  See I.R.C. § 453B (2007).  Moreover, the Department misconstrues the relationship of SAC to the installment obligation.  (See Resp't Resp. Br. at 12-13.)  SAC is not a party to the installment obligation, but is "'the assignee stand[ing] in the shoes of the assignor.'"  See Chrysler Fin. Co. v. Indiana Dep't of State Revenue, 761 N.E.2d 909, 914 (Ind. Tax Ct. 2002) (citation omitted), review denied.  Consequently, if IRC § 453B does not apply to Superior Auto, it cannot apply to its assignee, SAC.  Superior Auto is ineligible for IRC 453B treatment because its sales are specifically excluded from the definition of an installment sale under IRC § 453.  See I.R.C. § 453(b)(2)(A) (2007) (excluding "dealer dispositions" from the term "installment sale"); I.R.C. § 453(l)(1)(A) (2007) (stating a "dealer disposition" means "[a]ny disposition of personal property by a person who regularly sells or otherwise disposes of personal property of the same type on the installment plan").

Indiana Bad Debt Statute excludes SAC's market discount income from the Indiana bad debt calculation. The Indiana Bad Debt Statute, in relevant part, states

> (a) In determining the amount of [sales] and use taxes to which a retail merchant must remit under [Indiana Code § 6-2.5-6-7], the retail merchant shall, subject to subsections (c)[8] and (d), deduct from the retail merchant's gross income from retail transactions made during a particular reporting period, an amount equal to the retail merchant's receivables which . . . were written off as uncollectible debt for federal tax purposes under [IRC § 166] during the particular reporting period.
>
>         \* \* \* \* \*
>
> (d) The following provisions apply to a deduction for a receivable treated as uncollectible debt under subsection (a):
>   (1) The deduction does not include interest.
>   (2) The amount of the deduction shall be determined in the manner provided by [IRC § 166] for bad debts but shall be adjusted to exclude:
>     (A) financing charges or interest;
>     (B) sales or use taxes charged on the purchase price;
>     (C) uncollectible amounts on property that remain in the possession of the seller until the full purchase price is paid;
>     (D) expenses incurred in attempting to collect any debt; and
>     (E) repossessed property.

I.C. § 6-2.5-6-9(a)(3), (d)(1)-(2) (footnote added).

The Indiana Bad Debt Statute first requires a retail merchant (or its assignee) to deduct the amount written off as uncollectible debt for federal tax purposes under IRC § 166 from its gross retail income. See I.C. § 6-2.5-6-9(a)(3). Accordingly, the amount written off under IRC § 166 is incorporated into the Indiana calculation solely as the computational starting point in determining Indiana's bad debt deduction.

---

[8] Indiana Code § 6-2.5-6-9(c) limits the assignment of an Indiana bad debt deduction to an individual or entity that is part of the same affiliated group. See IND. CODE § 6-2.5-6-9(c) (2007). The validity of Superior Auto's assignment of the installment sale contracts to SAC is not at issue in this matter. (See, e.g., Resp't Reply Supp. Cross-Mot. Summ. J. at 2.)

Indiana Code § 6-2.5-6-9(d) (hereinafter "Subsection (d)") lists the types of revenue that must be excluded from this starting point in calculating the amount of the Indiana bad debt deduction. I.C. § 6-2.5-6-9(d)(1)-(2). Specifically, Subsection (d) requires a taxpayer to exclude amounts that reduce the original sales tax base (i.e., the value of repossessed property or property still in the seller's possession) and that were not part of the original retail sales tax base (i.e., interest, financing charges, sales or use tax, and debt collection expenses) from the difference between gross retail income and the amount of the federal bad debt. See I.C. § 6-2.5-6-9(d)(1)-(2). See also IND. CODE § 6-2.5-1-5 (2007) (amended 2009) (defining "gross retail income").

The Department contends that it properly removed market discount income from SAC's Indiana bad debt deduction because Subsection (d) must treat market discount income in the same way it is treated for federal income tax purposes – as interest. (See, e.g., Resp't Resp. Br. at 16-17; Resp't Reply Br. at 5.) Indiana, however, does not conform to the federal treatment of market discount income for three reasons.

First, the use of the Market Discount Rules to determine the amount of a federal bad debt deduction under IRC § 166 applies just to that federal calculation, which is just the starting place for calculating the Indiana deduction. See I.C. § 6-2.5-6-9(a)(3). The influence of these federal rules does not permeate the Indiana calculation further because neither the Indiana Bad Debt Statute nor Indiana's sales and use tax laws include the term "market discount" or the federal income tax concept of market discount. See I.C. § 6-2.5-6-9; IND. CODE 6-2.5-1-1 et seq. (2007). See also Johnson Cnty. Farm Bureau Coop. Ass'n. v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991) (stating that the foremost goal in construing a statute is to ascertain and give

effect to the true intention of the Legislature), aff'd, 585 N.E.2d 1336 (Ind. 1992); F.A. Wilhelm Constr. Co. v. Indiana Dep't of State Revenue, 586 N.E.2d 953, 956 (Ind. Tax Ct. 1992) (stating that the best evidence of legislative intent is the statute itself); Caylor-Nickel Clinic, P.C. v. Indiana Dep't of State Revenue, 569 N.E.2d 765, 769 (Ind. Tax Ct. 1991) (providing that to give effect to a statute's meaning, the Court must consider the Legislature to have intentionally chosen the statutory language and may not expand or contract the meaning of a statute by reading language into it to correct supposed omissions), aff'd, 587 N.E.2d 1311 (Ind. 1992). Accordingly, the absence of both the term and the concept of "market discount" from the Indiana Bad Debt Statute indicates that the Legislature intended adjustments to the federal bad debt starting point to be independent of federal income tax market discount concepts. Thus, the Legislature did not intend to surrender the power to determine the contour of Indiana's bad debt deduction to Congress. See Clifft v. Indiana Dep't of State Revenue, 660 N.E.2d 310, 316 (Ind. 1995) (explaining that when construing statutory language, it is equally important to note what the statute does not say as well as what it does say).

Second, excluding market discount income from the Indiana bad debt calculation under Subsection (d) is incompatible with the purpose of the Indiana exclusions from the federal bad debt deduction. See Uniden Am. Corp. v. Indiana Dep't of State Revenue, 718 N.E.2d 821, 826-27 (Ind. Tax Ct. 1999) (stating that the Court looks to the nature and purpose of a statute to determine the Legislature's intent). "The [Indiana Bad Debt Statute] provides tax relief to merchants [(or assignees)] who have financed the sales tax for installment contract purchases on which consumers later default." Chrysler Fin. Co., 761 N.E.2d at 916 (citation omitted). Animating this intent,

Subsection (d) excludes revenue items from the installment payments that either were not part of, or that reduced, the underlying retail sales tax base, which is the purchase price of the cars alone. If Subsection (d) were to exclude market discount income as if it were interest, the Indiana bad debt deduction for an assignee using the Market Discount Rules would not equal the debt that was unable to be collected due to the default (i.e., the sales tax not collected from the purchaser). See I.C. § 6-2.5-6-9(d). Indeed, SAC is already limited by the federal starting place to recoup no more sales tax than the amount paid to the Department. Thus, to allow a second haircut by treating market discount income as excludable interest would result in a windfall to the Department.

Finally, SAC's inclusion of market discount income in its Indiana bad debt calculation does not offend, as the Department claims, the limitation that bars an assignee like SAC from writing off more than it paid for the discounted installment sale contracts. This limiting principle is already guaranteed by the requirements that Indiana's bad debt calculation start with the amount written off for federal income tax purposes. See 1 Stop Auto, 810 N.E.2d at 690; SAC I, 894 N.E.2d at 1120. Moreover, the portion of each installment payment characterized as market discount income for federal income tax purposes is income that has actually been paid to SAC. (See Goldberg Aff. ¶¶ 4-14, Ex. B.) The price that SAC paid for the installment sale contracts is unrelated to the amount of sales tax paid to the Department that was based on Superior Auto's underlying retail sale of the cars that SAC was unable to collect. Consequently, the Court holds that the Indiana Bad Debt Statute does not exclude

market discount income from the calculation of Indiana's bad debt deduction.[9]

## CONCLUSION

The Department erred in denying 30% of SAC's three refund claims because the calculation of an Indiana bad debt deduction does not require the exclusion of market discount income. Accordingly, the Court GRANTS summary judgment in favor of SAC and against the Department.

SO ORDERED this 24th day of December 2014.

Martha Blood Wentworth
Judge, Indiana Tax Court

Distribution:
Mark J. Richards, James R. Betley, Matthew J. Ehinger, ICE MILLER LLP, One American Square, Suite 2900, Indianapolis, IN 46282-0002;

Gregory F. Zoeller, Attorney General of Indiana, By: John P. Lowrey, Deputy Attorney General, Indiana Government Center South, Fifth Floor, 302 West Washington Street, Indianapolis, IN 46204-2770.

---

[9] The holding in this case neither conflicts with nor overrules SAC I because the issue in SAC I was "how much SAC was allowed to write off as uncollectible debt for federal tax purposes." SAC I, 894 N.E.2d at 1119 (emphasis added). The Court was not asked in this case to determine whether SAC wrote off on its federal returns more than it actually paid for the installment sale contracts at issue. Rather, the issue here, which was not addressed in SAC I, concerns the impact of the Market Discount Rules on both the federal and the Indiana bad debt deductions.